<u>NOT FOR PUBLICATION</u>                                                                                      [53]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERNEST C. BRIGGS, | : | Civil Action No. 05-1906 (FLW) |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| JOHNNIE MOORE, et al. | : | |
| | : | |
| Defendants. | : | |

<u>**WOLFSON, UNITED STATES DISTRICT JUDGE**</u>

Presently before the Court is a Motion for Summary Judgment by Defendants, Asbury Park Police Sergeant Johnnie Moore ("Moore"), Asbury Park Police Director Louis Jordan ("Jordan"), and Asbury Park Municipal Court Administrator Patricia Green ("Green") on the two remaining claims in Plaintiff's §1983 Complaint. Specifically, Defendants contend that summary judgment is proper on Plaintiff's claims of imprisonment without probable cause and conspiracy because the Defendants are entitled to qualified immunity and because Plaintiff has not raised an issue of material fact regarding the underlying events. The Court has considered the moving, opposition and reply papers; for the reasons set forth in the opinion below, I will grant Defendants' Motion for Summary Judgment.

1

**I. Background**

On or about May 7, 2003, Plaintiff, Ernest C. Briggs ("Briggs") was arrested following an altercation with Asbury Park police officers[1].  Specifically, Police Director Jordan was on routine patrol in Asbury Park when he observed a grey car disregard two traffic lights.  Indeck Cert., ex. C.  Jordan began to follow the car, however, after losing sight of the vehicle, Jordan was forced to terminate his pursuit. Id.  Thereafter, Jordan heard Officer Darling advise over the radio that he was in foot pursuit of a subject nearby.  When Jordan arrived at the scene he saw the same grey vehicle that he had been pursuing earlier and recognized the subject, Briggs, as someone who had confronted him earlier in the day.  Jordan and the other officers pursued Briggs, but Briggs kept ignoring the officers' verbal commands to stop, and, eventually, Briggs had to be physically restrained by the officers.  During this altercation, two officers sustained injuries that required treatment at a nearby medical center.  Thereafter, Briggs was handcuffed and transported to police headquarters.

After Briggs' removal, Jordan returned to the scene and noticed that the registration on Briggs' vehicle had expired.  Moreover, Jordan discovered that the registration was intended for a 2003 Dodge instead of the 1986 Grey Volkswagen that Briggs was driving.  In addition, Officer

_____

[1]Although Plaintiff's brief includes a so-called "Statement of Undisputed Facts", this statement does not provide an alternative set of facts upon which this Court can rely, nor does it contest the detailed fact statement provided in support of Defendants' motion.  Indeed, other than to repeat the unsupported allegation that the officers "made up a story together saying I violated laws," Pl's Br. at 1, Plaintiff does not provide this Court with any facts to dispute Defendants' Fact Statement nor does Plaintiff provide any certification or documentation to support the allegations set forth in the Complaint.  Because Plaintiff has not enumerated an alternative set of facts and provides nothing to support his claims that the officers concocted the allegations and charges underlying Plaintiff's indictment and subsequent plea, at this juncture, after the close of discovery, this Court will primarily rely upon the facts and supporting documentation provided by the Defendants in drafting this opinion.

2

Moore found a plastic bag containing crack cocaine in Briggs' car. As a result of these incidents, Plaintiff was arrested for two counts of disregarding a traffic light, reckless driving, assault on police officers, driving with a suspended license, operating an unregistered motor vehicle, possession of CDS within 1,000 feet of a school, possession of CDS within 500 feet of a park, eluding police and resisting arrest.  After the May 7, 2003 arrest, three Complaint-Warrants were issued by Asbury Park Court Administrator, Patricia Green, based on Jordan's observations of Briggs' conduct.  Indeck Cert., exs. I, J, & K.  In addition, a fourth Complaint-Warrant was issued by Green based upon Moore's observation of crack cocaine in Plaintiff's vehicle.  Id., ex. L.

Subsequently, Plaintiff was indicted by a Monmouth County Grand Jury for one count of violating N.J. Stat. Ann. 2C:35-10a(1)(Possession of a Controlled Dangerous Substance), two counts of N.J. Stat. Ann. 2C:12-1b(5)(a)(Aggravated Assault of a Police Officer), and one count of violating N.J. Stat. Ann. 2C:29-2a (Resisting Arrest) in connection with the incidents that occurred on May 7, 2003.  Thereafter, on July 27, 2005, Plaintiff pled guilty to a charge of resisting arrest.

**II. Procedural History**

On April 11, 2005, Plaintiff filed a §1983 action in the United States District Court against Green, Jordan, Moore, Municipal Court Judge Mark Apostolou, Public Defender James Kinarney, Municipal Court Prosecutors Sean Brennan and Barbara Suppa, and Monmouth County Judge Ira Kreizman.  In his Complaint, Plaintiff alleged that Green, Jordan and Moore violated his civil rights by "putting probable cause on the Complaint." Pl's Compl. at 6.  In

addition, Plaintiff alleged that all the Defendants conspired against him.  On May 5, 2005, the

Honorable Judge Stanley Chesler dismissed all counts against all Defendants except for

Plaintiff's claims for imprisonment without probable cause and conspiracy as against Green,

Jordan and Moore which were allowed to proceed to discovery.  On November 10, 2006,

Defendants filed the instant Motion for Summary Judgment.


**III. Legal Standard**

      A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film

Corp., 79 F.3d 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of

material fact, the Court must view the underlying facts and draw all reasonable inferences in

favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U .S.

574, 587 (1986); Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). The threshold

inquiry is whether there are "any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the moving party has properly supported its

showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The

non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324; <u>Big Apple BMW, Inc.</u> <u>v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir.1992) ("to raise a genuine issue of material fact ... the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold").

**III. Discussion**

Plaintiff's claims are brought pursuant to 42 U.S.C. §1983 which provides, in relevant part, that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. However, section 1983 does not, by its own terms, create substantive rights. <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006). To state a claim for relief under section 1983, a plaintiff must allege that a defendant (1) violated a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

Accordingly, the initial step in evaluating claim under section 1983 is to "identify the exact contours of the underlying right said to have been violated." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998). Here, Plaintiff alleges that Defendants arrested and imprisoned him without probable cause. The Fourth Amendment prohibits a police officer from

arresting a citizen except upon probable cause.  Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.  Id. at 483; United States v. Cruz, 910 F.2d 1072, 107 (3d Cir. 1990).  When a police officer arrests a person without probable cause, however, that officer may be liable in a civil rights suit for damages. Orsatti, 71 F.3d at 483.

Before this Court can properly address the merits of Plaintiff's §1983 claim, the Court must consider Defendants' argument that Plaintiff's claims are barred by the doctrine of qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001) ("Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation'. . . .The privilege is 'an immunity from suit rather than a mere defense to liability. . . we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'")(citations omitted)(emphasis added).  The doctrine of qualified immunity shields government officials from suit when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts must undertake a two-step inquiry to determine whether a state official is entitled to qualified immunity. First, the court must determine whether the facts alleged show that the government official's conduct violated a constitutional right. See Saucier, 533 U.S. at 201.  If the Plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).  However, if the Plaintiff establishes a constitutional violation, the Court must then determine whether the constitutional right allegedly

6

violated by the defendant was "clearly established" at the time the violation occurred. <u>See</u> <u>id.</u>  If the court concludes that the defendant's conduct violated a clearly established constitutional or statutory right, it must deny the defendant the protection afforded by qualified immunity. <u>See</u> <u>id.</u>; <u>see also</u> <u>Williams v. Bitner</u>, 455 F.3d 186, 190-91 (3d Cir.2006).

A. <u>Section 1983 Claim Against Patricia Green</u>

In the instant matter, Plaintiff contends that Patricia Green, the Asbury Park Court Administrator, and the other Defendants, violated his Fourth Amendment Rights when they arrested him without probable cause.  Specifically, Plaintiff contends that the key evidence is an interrogatory answer by Green which states that Green found "probable cause for the issuance of a claim-summons against Plaintiff. . .based upon the facts which were certified on the face of the complaint signed against Plaintiff."  Pl's Opp. Br., ex. A.  In light of the fact that four Complaint-Warrants issued against Plaintiff, instead of Complaint-Summonses, Plaintiff alleges that the warrants were improperly issued without probable cause. The Court does not agree.

New Jersey Court Rule 3:3-1(a) provides that an arrest warrant may issue on a complaint if "a judge, clerk, deputy clerk, municipal court administrator or deputy municipal court administrator finds from the complaint or an accompanying affidavit or deposition, that there is probable cause to believe that an offense was committed and that the defendant committed it and notes that finding on the warrant."  N.J. Ct. R. 3:3-1.  Moreover, Rule 3:3(1)(c) provides that "[a] summons rather than an arrest warrant shall be issued unless: (1) the defendant is charged with murder, kidnapping, aggravated manslaughter, manslaughter, robbery, aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, second degree

aggravated assault, aggravated arson, burglary, violations of Chapter 35 of Title 2C that constitute first or second degree crimes, any crime involving the possession or use of a firearm, or conspiracies or attempts to commit such crimes. . .(3) there is reason to believe that the defendant is dangerous to self, other persons, or property. . ."  New Jersey Ct. R. 3:3-1(c).  In the instant matter, each of the Four Complaint Warrants that Green issued were based on particular facts and observations of the complaining officers, Jordan and Moore, and, each warrant documented the specific reason for a finding of probable cause.  For example, Green issued three Complaint Warrants based on Jordan's observations of Briggs' conduct; the first warrant, issued pursuant to N.J.Stat. Ann. 2C:12-1B(6) for aggravated assault committed while trying to elude a law enforcement officer, stated "Probable Cause: Defendant was positively identified at scene." Indeck Cert., ex. I.  Similarly, the warrant that issued based on N.J. Stat. Ann. 2C:29-2B for resisting arrest noted, "Probable Cause: the Defendant was identified as the accused."  Id., ex. J. In addition, the warrant that issued pursuant to N.J.Stat. Ann. 2c:12-1B(5)(A) for aggravated assault provided, "Probable Cause: the Defendant was identified at scene as the accused."  Id., ex. K.  Finally, the Warrant that issued pursuant to N.J. Stat. Ann. 2C:35-10A(1) for possession of controlled substances based on Officer Moore's observations explained, "Probable Cause: the accused was arrested and found to be in possession of CDS." Id., ex. L. Thus, in the absence of any evidence to contradict the facts set forth in the Complaint Warrants, the Court finds that Plaintiff has failed to raise an issue of material fact regarding the information and probable cause determinations contained in the warrants.

In addition, although Briggs was eventually indicted for third degree crimes in October 2003, Indeck Cert., ex. M., at the time that Green issued the individual Complaint-Warrants on

May 7, 2003, no degree of crime had been determined.  Therefore, pursuant to New Jersey Court

Rule 3:3(1), it was reasonable for Green to issue Complaint Warrants as opposed to Complaint

Summons.   Moreover, the Court notes that not only had Plaintiff been the subject of a police

chase on May 7, 2003, but two officers were injured during the altercation with Briggs.  Thus,

even if a degree of crime had been determined as of May 7, 2003, it would still have been

reasonable for Green to issue a Complaint Warrant instead of a Complaint Summons pursuant to

N.J. Ct. R. 3:3(1)(c)(3) which provides that a warrant may issue if "there is reason to believe that

defendant is dangerous to self, other persons, or property."  Therefore, regardless of Green's

interrogatory answer, there are no facts to show that Green's conduct in issuing the Complaint

Warrants as opposed to Complaint Summonses violated any of Plaintiff's constitutional rights.

At this juncture, Plaintiff has failed to proffer any evidence that would establish that Green's

actions in issuing a Complaint Warrant amounted to a violation of Plaintiff's Fourth Amendment

Rights; thus, the Court holds that Green is entitled to qualified immunity. See Bennett v.

Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("[i]f the plaintiff fails to make out a constitutional

violation, the qualified immunity inquiry is at an end").   For these reasons, the Court finds that

summary judgment is appropriate as to Defendant Green.


B. Section 1983 Claim Against Louis Jordan

     Next, Plaintiff alleges that police director Louis Jordan acted without probable cause

because he "lie[d]. . . about the charges that they sign[ed and gave] a false report."  Pl's Br. At 3.

Moreover, Plaintiff contends that Jordan did not have law enforcement power at the time of his

arrest. Indeck Cert., ex. R, Briggs Dep. 72-73.  For these reasons, Plaintiff contends that Jordan

acted without probable cause and unlawfully arrested and imprisoned him.  The Court does not agree, and, for the reasons stated below, I find that Jordan is entitled to qualified immunity.

To begin, the Court notes that Plaintiff has not set forth any evidence to establish that Jordan lied or falsified any of the charges against him.  Indeed, Plaintiff has put forth no evidence at all regarding Jordan's actions in this matter other than the bare allegations contained in his complaint.  On a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586.  Indeed, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  At this juncture, Plaintiff has not set forth any facts to establish that Jordan lied about his observations regarding the crimes alleged in the Complaint Warrant.  In the absence of anything other than Plaintiff's bare allegations, Plaintiff has not established an issue of material fact as to whether Jordan violated his constitutional rights.

Moreover, to the extent that Plaintiff argues that Jordan did not have the law enforcement power to arrest him at the time of these incidents, the Court does not agree.  In February 2003, the City of Asbury Park conferred upon Jordan all the law enforcement powers attributable to a police officer pursuant to Asbury Park Ordinance 2616.  Although this power was eventually withdrawn in 2005 following an opinion by the New Jersey Appellate Division, see Jordan v. Harvey, 381 N.J. Super. 112 (Super. App. Div. 2005)[2], at the time that Briggs was arrested in

_____

[2]In Jordan, the court held that the Asbury Park police director position was civilian in nature and that Asbury Park was not authorized to confer law enforcement power on the police director.  381 N.J. Super. at 114-115.

May 2003, it was reasonable for Jordan to believe that he was vested with the proper power to

effectuate an arrest of Briggs.  Thus, the Court holds that this alone does not establish a

constitutional injury.  Moreover, New Jersey law provides that "[w]henever an offense is

committed in his presence, any constable or police officer shall, and any other person may,

apprehend without warrant or process any disorderly person and take him before any magistrate

of the county where he was apprehended."  N.J. Stat. Ann. 2A:169-3.  Thus, based on Jordan's

personal observation of the crimes with which Plaintiff was charged, Jordan had the statutory

authority to effectuate an arrest before an arrest warrant was issued. N.J. Stat. Ann. 2A:169-3

(emphasis added).  For all these reasons, the Court finds that Plaintiff cannot establish that

Jordan's actions violated his Fourth Amendment rights and Jordan is entitled to qualified

immunity.


C. Section 1983 Claim Against Johnnie Moore

     Finally, Briggs contends that Moore violated his Fourth Amendment rights when he lied

about finding drugs in Plaintiff's car on May 7, 2003.  Indeck Cert., ex. R, Briggs Dep., 81:15-

83:10.  Specifically, Briggs provided the following testimony at his deposition:

> Q: And you're claiming Moore never found drugs in the car?
> A: No, he never found any drugs. He was –
> Q: When he searched the car?
> A: No. They took me to the police station already, but there was no drugs. That's the
> reason the case was thrown out, the charges were thrown out. There never was drugs in
> the prosecutor's vault.
> Q: Did anybody ever tell you there were no drugs?
> A: It was obvious, because I never had none. And he never even planted. He just figured I
> was going to cop out, because that's the routine when people get serious charges, they
> just cop out, because they offered me a real good plea.
> . . . .

11

> Q: Okay. So what you just told me is the basis for your naming Johnnie Moore as a
> defendant in this lawsuit?
> A: Yeah, that's why I named Johnnie Moore.

Briggs. Dep. 82:14-83:19.  Based on his own, unsubstantiated belief that Moore did not find

drugs in the car, Plaintiff alleges that Moore violated his Fourth Amendment rights. The Court

does not agree.

To begin, Plaintiff has not set forth any evidence to support his claim that Moore did not

find drugs in Plaintiff's car.  Indeed, other than Plaintiff's bare allegations against Moore, there is

nothing in the record that would support a finding that Moore falsified the drug charges.  In fact,

based on the record before me, this Court can only find that the following events occurred on

May 7, 2003: immediately following Plaintiff's arrest on May 7, 2003, Moore searched

Plaintiff's car for keys so that the car could be towed.  During the search Moore observed a clear

plastic bag containing cocaine on the passenger seat of Briggs' car.  Moore seized this evidence,

sealed it and placed it in an evidence locker.  Indeck Cert., Ex. F.  Subsequently, Green issued a

Complaint Warrant based on Moore's observations and Plaintiff was indicted by a grand jury in

October 2003 for possession of controlled substances, which signifies that the grand jury found

probable cause that Plaintiff possessed illegal drugs.  At this juncture, after the close of

discovery, there is nothing to show that Moore acted without probable cause or that he violated

any of Plaintiff's constitutional rights.  Thus, the Court finds that summary judgment is

appropriate and that Moore is entitled to qualified immunity.


IV. CONCLUSION

12

For the reasons set forth above, this Court will grant Defendants' Motion for Summary Judgment. An appropriate Order shall follow.


Date: March 13, 2007                                    /s/ Freda L.Wolfson
_____        The Honorable Freda L. Wolfson
                                                        United States District Judge

13